LAVINA M. ANNIS, Appellant, v. C. F. MORGAN, Executor, et al., Appellees.

No. 40342.

JUNE 23, 1930.

*O. P. Myers, E. C. Ogg,* and *E. M. S. McLaughlin,* for appellant.

*Henry Silwold,* for executor, appellee.

*George E. Campbell,* City Solicitor, for Objector City of Newton, appellee.

EVANS, J.—The plaintiff claims jointly for herself individually and for herself as executrix of the estate of her husband. Her claim is for $4,500, the par value of certain Liberty bonds alleged to have been owned by her and her husband in his lifetime, and to have been taken and retained by the decedent Thornton in his lifetime.

The bonds in question were originally the property of Thornton. He made a gift thereof to the Annises, reserving to himself the interest during his lifetime. The bonds were delivered to Annis, and by him deposited in a safety box in the First National Bank, which he then and there rented for that purpose.

For many years prior to March 2, 1927, Thornton and wife and Annis and wife were intimately connected, and resided together in the same home. On March 2, 1927, Mrs. Thornton died. On March 18, 1927, the gift of the bonds was made, with considerable formality. Possession was delivered to Annis. The interest-due dates of the bonds were April 15th and October 15th of each year. On April 15, 1927, Annis and Thornton went together to the First National Bank, for the purpose of obtaining the interest coupons for the benefit of Thornton. Annis procured the safety box, and brought it to Russell, cashier of the bank, who took the bonds therefrom and clipped the coupons, and then returned the bonds to the box. The coupons were taken by Thornton and by him deposited in the Jasper County Savings Bank, where he transacted his business. Up to this point, the facts stated are abundantly supported in the evidence. The features of the case which the trial court regarded as too doubtful to justify a submission of the case pertain to later events.

Annis died September 2, 1927. On October 14th, his wife was appointed his executor. On that date, she, with the aid of another person, examined the bonds in the safety box, and found them all present. Sometime later, it was discovered that they had disappeared from the box. It is the contention of plaintiff that, on October 15, 1927, Thornton took possession of the bonds for the purpose of clipping his coupons, and that he never returned them to the box. The proof of this fact is made largely by circumstantial evidence. In the use of these safety boxes, the bank furnished to its customer two identical keys. The bank retained one key. In order to open the box, it was

requisite to use jointly the key of the bank and one. of the customer keys. It was shown that Thornton had one of the customer keys on October 15th; that he came to the bank on or about that date, for the purpose of obtaining coupons; that he was waited on by one of the clerks, who became a witness. This witness was unable to remember what particular box was opened by her for Thornton on that date. She testified, however, that he came with a key to a box, and that she opened such box, and that he took its contents and carried the same into a private booth. He never had had any safety box of his own in the First National Bank, nor had he any interest in the contents of any safety box except the Annis box. On that date, he deposited, as usual, his coupons with the Jasper County Savings Bank. On April 15, 1928, he again deposited coupons, though less in amount. The evidence discloses that, after October 15, 1927, and before April 15, 1928, he had sold to the Jasper County Savings Bank two Liberty bonds of $500 each. He died in May, 1928. Among his effects his executor found 9 Liberty bonds, totaling $3,500; whereas 11 bonds, totaling $4,500, were removed from the Annis box.

In ruling upon the motion for a directed verdict, the trial court made the following pronouncement:

"I have considered this case quite considerably, and the evidence here as to who took those bonds out of that safe or out of that box is not very satisfactory to me. I don't believe that the evidence would warrant this case in going to the jury. The mere possibility that the testator here did take those bonds wouldn't be sufficient ground for a jury to return a verdict. It is speculative. There is no showing here how many bonds that this man had purchased. There is no showing that these bonds that were in the possession of the executor were the same bonds that were in the safety deposit box, and there is no way of identifying them. There is no evidence here that the bonds that were in the safety deposit box were in the possession of the testator after they were taken from this box. I don't believe there is sufficient evidence here to go to the jury, and this motion will be sustained."

The foregoing indicates the question of doubt in the mind

of the trial court, and our attention will be confined to that point.

If the evidence was sufficient to sustain the finding that the bonds had been removed by Thornton and had not been returned by him, then the plaintiff would be entitled to the establishment of her claim to the amount of $4,500. And this would be so whether she had established the identity of the bonds or not. She was not confined to the remedy of recovering possession of the lost bonds. If she could show that the bonds in the hands of the executor were the identical bonds taken from the safety box, she would, at her election, be entitled to claim the bonds in kind, or the value thereof. If she failed to identify the bonds, this was not a sufficient reason for dismissing her claim. She was not able to state the identifying numbers of her bonds. She was able to state the denominations and the issue to which they belonged. This deficiency in her proof was by no means fatal even to the identification. The question of identification was still one for the jury, in the light of all the evidence. We think the evidence was quite abundant to warrant a jury in finding that the decedent did remove the bonds, and that the bonds found among his effects were a part of the identical bonds contained in plaintiff's safety box. This does not necessarily mean that the decedent intended any wrong in taking the bonds. He had a qualified interest in them and a qualified right of possession, for the purpose of collecting his interest. There was no burden laid upon the plaintiff to show the motive of the decedent, whether good or bad. The fact that he sold two of the bonds would indicate that he claimed a greater right in them than the mere right of collecting interest. Perhaps he conceived the idea that his rights had become enlarged by the death of Annis, one of the donees. In any event, the rights of the donees were not affected by any subsequent contention or conception of his.

We hold that the question of the identity of the bonds found among the effects of the decedent was material only in the event of an election by plaintiff to claim the bonds in kind. She was entitled to recover the value of the bonds, if removed from her box by decedent, regardless of whether they were found among the effects of the decedent or not. We think the learned trial court erred in withdrawing the case from the jury.

The judgment below is, accordingly,—*Reversed.*

MORLING, C. J., and FAVILLE, DE GRAFF, ALBERT, KINDIG, WAGNER, and GRIMM, JJ., concur.